1  LAWYERS FOR CLEAN WATER, INC.
   Daniel Cooper (Bar No. 153576)
2  Email: cleanwater@sfo.com
   Martin McCarthy (Bar No. 194915)
3  Email: martin@lawyersforcleanwater.com
   1004-A O'Reilly Avenue
4  San Francisco, California 94129
   Telephone: (415) 440-6520
5  Facsimile: (415) 440-4155

6
   Attorneys for Plaintiff
7  ORANGE COUNTY COASTKEEPER

JS-6

```
            FILED
CLERK, U.S. DISTRICT COURT

    OCT 2 3 2009
    10-23-09
CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY
```

8

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  ORANGE COUNTY COASTKEEPER          Case No. SACV 08-0739 DDP
    a non-profit corporation,          (RNBx)
14
              Plaintiff,               [Proposed]
15                                     CONSENT DECREE
              v.
16
    VI-CAL METALS, INC., a corporation,
17                                     (Federal Water Pollution Control
              Defendants.             Act, 33 U.S.C. § 1251 et seq.)
18

19

20

21

22

23

24

25

26

27

28

1    **WHEREAS,** Orange County Coastkeeper ("Coastkeeper" or "Plaintiff") is a
2    non-profit corporation dedicated to the preservation, protection, and defense of the
3    environment, the wildlife, and the natural resources of Orange County area receiving
4    waters;

5    **WHEREAS,** Vi-Cal Metals, Inc. ("Defendant" or "Vi-Cal Metals") operates
6    two scrap metal recycling facilities located at: (1) 1645 N. Case Street, Orange,
7    California (hereinafter "Vi-Cal Orange Facility"); and (2) 1400 North Baxter Street,
8    Anaheim California ("Vi-Cal Anaheim Facility")(collectively "Vi-Cal Metals
9    Facilities" or "Facilities" or "Sites").

10    **WHEREAS,** Coastkeeper contends that Defendant's operations at the Vi-Cal
11    Orange Facility results in discharges of pollutants into area storm drains, the Collins
12    Flood Control Channel, the Santa Ana River, and ultimately the Pacific Ocean
13    (collectively "Vi-Cal Orange Receiving Waters"); and that Defendant's operations at
14    the Vi-Cal Anaheim Facility result in discharges of pollutants into area storm drains,
15    Carbon Creek Channel, Coyote Creek, the San Gabriel River, and ultimately the
16    Pacific Ocean (collectively referred to as the "Vi-Cal Anaheim Receiving Waters");
17    and  further contends that Defendant's discharges from both of the Facilities are
18    regulated by the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*
19    ("Clean Water Act", "CWA" or "Act"), Sections 301(a) and 402, 33 U.S.C §§
20    1311(a), 1342;

21    **WHEREAS,** on May 10, 2007, Coastkeeper served Defendant, the United
22    States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water
23    Resources Control Board ("State Board") and the Regional Water Quality Control
24    Board ("Regional Board"), with a notice of intent to file suit ("60-Day Notice")
25    under Sections 505(a) and (b) of the CWA, 33 U.S.C. § 1365(a) and (b) for
26    violations at Defendant's Vi-Cal Orange Facility.  The 60-Day Notice alleged that
27    the recipients had in the past and continue to violate Sections 301(a) and 402 of the
28    Act, 33 U.S.C. §§ 1311(a) and 1342, by discharging pollutants into the Vi-Cal

[proposed] Consent Decree                -2-                Case No. SACV08-0739 DDP (RNBx)

1  Orange Receiving Waters in violation of National Pollution Discharge Elimination

2  System ("NPDES") General Permit No. CAS0000001 [State Board] Water Quality

3  Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Permit")

4  and the Act;

5  **WHEREAS,** on July 24, 2007, Coastkeeper filed a complaint against

6  Defendant in the United States District Court, Central District of California (Civil

7  Case No. SACV 07-0853 DDP (FMOx)) entitled *Orange County Coastkeeper v. Vi-*

8  *Cal Metals, Inc.* ("Vi-Cal Orange Action");

9  **WHEREAS,** on April 24, 2008, Coastkeeper served Defendant, the United

10  States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water

11  Resources Control Board ("State Board") and the Regional Water Quality Control

12  Board ("Regional Board"), with a notice of intent to file suit ("60-Day Notice")

13  under Sections 505(a) and (b) of the CWA, 33 U.S.C. § 1365(a) and (b) for

14  violations at Defendant's Vi-Cal Anaheim Facility. The 60-Day Notice alleged that

15  the recipient had in the past and continues to violate Sections 301(a) and 402 of the

16  Act, 33 U.S.C. §§ 1311(a) and 1342, by discharging pollutants into the Vi-Cal

17  Anaheim Receiving Waters in violation of the Industrial Permit and the Act.

18  **WHEREAS,** on July 3, 2008, Coastkeeper filed a complaint against

19  Defendant in the United States District Court, Central District of California (Civil

20  Case No. SACV 08-0739 DDP (RNBx)) entitled *Orange County Coastkeeper v. Vi-*

21  *Cal Metals, Inc.* ("Vi-Cal Anaheim Action");

22  **WHEREAS,** Defendant denies all allegations of the complaints filed in SACV

23  07-0853 DDP (FMOx) and in SACV 08-0739 DDP (RNBx)(collectively

24  "Complaints");

25  **WHEREAS,** Coastkeeper and Defendant (collectively referred to herein as the

26  "Settling Parties" or "Parties") have agreed that it is in the Parties' mutual interest to

27  enter into a Consent Decree setting forth terms and conditions appropriate to

28  resolving the allegations set forth in the Complaints without further proceedings;

1   **WHEREAS**, the Parties further agree that it is appropriate to enter into

2   complementary Consent Decrees in the Vi-Cal Orange Action and in the Vi-Cal

3   Anaheim Action;

4   **WHEREAS**, Defendant intends to continue industrial activities at the Vi-Cal

5   Metals Facilities and will therefore need to undertake additional measures to control

6   storm water pollution associated with continuing industrial activities;

7   **WHEREAS,** this Consent Decree shall be submitted to the United States

8   Department of Justice and EPA for the statutory review period pursuant to 33 U.S.C.

9   § 1365(c) and 40 C.F.R. § 135.5;

10   **WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree

11   shall be made in compliance with all applicable Federal and State laws and local

12   rules and regulations;

13   **WHEREAS**, the Parties recognize that this Consent Decree calls for the

14   implementation of structural Best Management Practices ("BMPs") and other

15   methods of reduction of potential total mass emission of contaminants by methods

16   the results of which are not entirely certain and acknowledge that achievement of the

17   numeric limits called for by this Consent Decree may not be immediately achievable;

18   **AND WHEREAS**, the Parties recognize that Defendant's agreement to install

19   sand filtration devices at the Facilities' storm water discharge points constitutes the

20   initial phase of an iterative compliance process, and that additional means of

21   reducing potential total mass emissions of contaminants may be necessary to meet

22   Defendant's obligation to achieve the numeric limits called for herein on or before

23   July 15, 2012;

24   **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE**

25   **SETTLING PARTIES AS FOLLOWS:**

26   1.   The Court has jurisdiction over the subject matter of this action pursuant

27   to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A);

28

1       2.    Venue is appropriate in the Central District Court pursuant to Section
2   505(c)(1) of the Act, 33 U.S.C. §1365(c)(1), because the Vi-Cal Facilities at which
3   the alleged violations took place are located within this District;

4       3.    The Complaints state a claim upon which relief may be granted against
5   Defendant pursuant to Section 505 of the Act, 33 U.S.C. § 1365;

6       4.    Coastkeeper has standing to bring this action.

7   **I.**    **CONSENT DECREE OBJECTIVES**

8       5.    It is the express purpose of the Parties entering into this Consent Decree
9   to further the objectives set forth in Section 101 *et seq.* of the CWA, 33 U.S.C. §
10  1251 *et seq.*, and to resolve those issues alleged by Coastkeeper in its Complaints. In
11  light of these objectives and as set forth fully below, Defendant agrees to comply
12  with the provisions of this Consent Decree and to comply with the requirements of
13  the Industrial Permit and all applicable provisions of the CWA at the Vi-Cal Metals
14  Facilities. Specifically, Receiving Water Limitation C(2) in the Industrial Permit
15  requires that the Vi-Cal Facilities "not cause or contribute to the exceedence of an
16  applicable water quality standards." Effluent Limitation B(3) of the Industrial Permit
17  requires that Best Management Practices ("BMPs") be developed and implemented
18  to achieve Best Available Technology ("BAT") and the Best Conventional Pollutant
19  Control Technology ("BCT"). Defendant is required to develop and implement
20  BMPs necessary to comply with the Industrial Permit's requirement to achieve
21  compliance with BAT/BCT standards and with Water Quality Standards.[1]

22  **II.**    **COMMITMENTS OF THE PARTIES**

23      **A.**    **Industrial Storm Water Pollution Control Measures**

24

25  [1] Water Quality Standards means water quality criteria contained in the Regional Water Quality
26  Control Plan, Los Angeles Region ("Basin Plan"), the California Ocean Plan, the National Toxics
27  Rule, the California Toxics Rule, and other state or federally approved surface water quality plans.

28

1    6.    Compliance Storm Event. The Parties agree that the Compliance Storm

2  for the Vi-Cal Metals Facilities is a 5 year, 24 hour return period rain event

3  ("Compliance Storm Event"), as defined by the National Oceanographic and

4  Atmospheric Administration ("NOAA") Atlas 2, Vol. XI, Figure 39 (1973) with an

5  assumed dry antecedent condition and 3.4 total inches of rainfall over a 24-hour

6  period. The Parties agree that any discharge of stormwater and/or stormwater

7  pollutants from the Vi-Cal Metals Facilities in connection with a rainfall event that

8  exceeds a Compliance Storm Event is not a violation of this Consent Decree.

9    7.    BMP Plan. By the Effective Date of this Consent Decree, or by August

10  21, 2009, whichever is earlier, Vi-Cal Metals will prepare a plan to capture,

11  infiltrate, evaporate, harvest, treat, and/or store to prevent off-site discharge of

12  industrial stormwater generated during rain events up to and including the

13  Compliance Storm Event at the Vi-Cal Metals Facilities ("BMP Plan"). Unless all

14  water is infiltrated, evaporated, or harvested, the BMPs set forth in the BMP Plan

15  shall include sand filtration, as described below, and may also include other

16  treatment devices that are as effective or more effective than sand filtration.

17  Defendant shall continue to implement the BMP Plan for the life of this Consent

18  Decree. The BMP Plan described in this paragraph may contain the following

19  measures listed in (a)-(k) of this paragraph, as appropriate, and Defendant shall

20  develop and implement additional measures, if necessary, to reduce contaminants in

21  storm water discharges to levels below the numeric limits set forth in  Paragraph

22  12of this Consent Decree:

23    (a)    Materials Storage and Industrial Activities.  Placing sources of

24  contamination in covered containers or under cover with such areas contained by

25  berming or other containment sufficient to prevent the exposure of pollutants to

26  storm water or rainwater and the runoff or discharge of pollutants;

27    (b)    Coating. Coating structural sources of contamination (e.g.

28  galvanized building roofs and siding);

[proposed] Consent Decree                           -6-               Case No. SACV08-0739 DDP (RNBx)

1       (c)    <u>Sweeping</u>. Employing high efficiency sweeping in order to
2   prevent the discharge of pollutants;
3       (d)    <u>Storing, Harvesting for Reuse, and/or Infiltrating Runoff.</u>
4   Constructing and maintaining on-site retention Facility (such as retention ponds or
5   swales, infiltration basins, baker tanks, sumps, cisterns, or dry wells/ injection wells)
6   designed to hold and store the runoff generated by a 5-year, 24 hour return period
7   storm event without any off-site discharge;
8       (e)    <u>Infiltrating Runoff.</u> Creating a pervious site such that infiltration
9   occurs passively through the Sites;
10      (f)    <u>Infiltration Structure.</u> Collecting and routing storm water to a
11  structure that is designed to be an infiltration structure (such as an infiltration basin
12  or dry well/ injection well);
13      (g)    <u>Treating Runoff.</u> Treating runoff discharging from the Sites.
14      (h)    <u>Sand Filters</u>. The BMP Plan may include the installation of the
15  sand filters evaluated in the Caltrans Retrofit Study ("CRS") or equivalent treatment
16  devices at appropriate locations.
17      (i)    <u>Routing Discharge to the Publicly Owned Treatment Works.</u>
18  Routing discharge to the publicly owned treatment works ("POTW")/ sanitary
19  sewers, in combination with on-site retention such that flows are discharged off-peak
20  in the POTW so as not to risk exacerbating wet weather Sanitary Sewer Overflow
21  risks from the POTW.
22      (j)    <u>Vehicle and Equipment Maintenance and Fueling.</u>
23          i.    Conducting all vehicle and equipment maintenance and
24  fueling at the Vi Cal Metals Facilities on asphalt or another impermeable surface;
25          ii.    Conducting all vehicle and equipment maintenance and
26  fueling at the Vi Cal Metals Facilities under cover;
27          iii.    Berming or otherwise containing the surface of the area
28  where vehicle maintenance and fueling occurs (hereinafter "Maintenance and

[proposed] Consent Decree        -7-        Case No. SACV08-0739 DDP (RNBx)

1   Fueling Area") in order to prevent the exposure of pollutants to storm water or
2   rainwater and the runoff or discharge of pollutants;

3          iv.    Cleaning the Maintenance and Fueling Area as necessary to
4   control track-off of pollutants;

5          v.    Dispensing all petroleum products within the Maintenance
6   and Fueling Area(s);

7          vi.    Installing tire washing Facility at exit points from the Vi-
8   Cal Metals Facilities to prevent off-site tracking from vehicles;

9          vii.    Annually power washing the entire paved part of the Vi-
10   Cal Metals Facilities, including areas not reachable by mechanical sweepers, and
11   dispose of the contaminated water consistent with all federal, state and local
12   requirements, and not to area storm drains.

13        (k)    While Defendant may employ some of the methods listed above
14   to achieve compliance with Numeric Limits by the end of the Consent Decree period,
15   it agrees to install sand filtering systems at the Vi-Cal Metals Facilities as described
16   in subsection (h) above prior to the beginning of the 2009-2010 wet season and to re-
17   coat all galvanized building roofs and siding, if any, at such Facilities by the end of
18   the 2010 calendar year if two or more samples from the 2009-2010 wet season reveal
19   exceedances of the Numeric Limit for zinc set forth in Table 1 below.

20       8.    Defendant shall provide the completed BMP Plan to Coastkeeper for
21   review and comment no later than the Effective Date of this Consent Decree, or
22   August 21, 2009, whichever is earlier. Defendant shall also provide a separate
23   document justifying the BMP selections. Coastkeeper shall respond with
24   comments within 20 days of receiving the Plan and statement justifying the BMP
25   selections in the Plan. Defendant shall incorporate Plaintiff's comments into the
26   Plan, or shall justify in writing why any comment is not being incorporated, within
27   14 days of receiving comments. Defendant shall implement the Plan by October 1,
28   2009.

1    9.    As described in Section B below, beginning with the 2009-2010 wet
2  season, and for each year thereafter during the term of this Consent Decree,
3  stormwater discharges from any storm water discharge point or outfall located at
4  the Vi-Cal Metals Facilities occurring during rain events less than the Compliance
5  Storm Event shall be considered a breach of this Consent Decree if: (a) the
6  pollutant concentrations in such discharge exceed the numeric limits set forth in
7  paragraph 12 below; (b) the corresponding potential mass emission reductions
8  described in paragraphs 13 through 15 below are not achieved; and (c) the
9  conditions of paragraph 16 below are not met.  Non-stormwater discharges from
10  the Containment Area not authorized by the Industrial Permit shall also be
11  considered a breach of this Consent Decree, subject to the Force Majeure
12  provisions set forth in Paragraph 36 below.  Permitted Discharges to the
13  POTW/sanitary sewer, if any, shall not be considered a discharge from the
14  Containment Area, and shall not be considered a breach of this Consent Decree.

15    **B.    NUMERIC LIMITS AND SAMPLING**

16    10.    Sampling Program.  By the Effective Date, or by August 21, 2009,
17  whichever is earlier, Defendant shall develop a plan for the collection of storm
18  water samples during storm events that incorporates the requirements of this
19  Consent Decree and the Industrial Permit, including, but not limited to, the
20  requirement to sample non-storm water discharges for the Vi Cal Metals Facilities
21  ("Sampling Plan"), and which specifically shall require sampling at all discharge
22  points from the Vi Cal Metals Facilities as described below, and all other new or
23  additional discharge points created in the future.  Additionally, Defendant shall take
24  effluent discharge samples from each discharge point for each sand filter installed
25  pursuant to the requirements of this Consent Decree and the BMP Plan.  Defendant
26  agrees to submit the Sampling Plan to Coastkeeper for review and comment as
27  soon as it is completed, but in any event no later than the Effective Date of this
28  Consent Decree, or by August 21, 2009, whichever is earlier.  Coastkeeper shall

[proposed] Consent Decree                    -9-                    Case No. SACV08-0739 DDP (RNBx)

1  provide comments, if any, to the Defendant within 20 days of receipt of the
2  Sampling Plan. Any disputes as to the adequacy of the Sampling Plan shall be
3  resolved pursuant to the dispute resolution provisions of this Consent Decree, set
4  out at paragraphs 28 through 31 below.

5     11.   <u>Sample Analysis and Sample Frequency</u>. In the 2009/2010 wet season
6  (defined as October 1- May 31), and continuing each wet season for the life of this
7  Consent Decree, Defendant shall collect storm water samples from every storm
8  event causing a discharge at the Vi-Cal Metals Facilities occurring from 7:00 a.m.
9  to 6:00 p.m. Monday through Friday, not including holidays when the Vi-Cal
10  Metals Facilities are not operating, and from each discharge location at the Vi-Cal
11  Metals Facilities where such discharge occurs, until a minimum of four such events
12  per wet season have been sampled.   Defendant shall analyze the samples for the
13  constituents identified in Table 1. Defendant may discontinue analyzing storm
14  water samples at any discharge point for a constituent specified in Table 1 after
15  four consecutive sampling results for the constituent at that discharge point are
16  reported as below the Detection Limit for the analyses. A California State certified
17  laboratory shall perform all sample chemical analyses. Defendant shall select
18  laboratories and analytical limits such that, at a minimum, the method detection
19  limits ("MDLs") shall be below CTR Levels set forth in Table 1(based on dissolved
20  concentrations). In addition, Defendant shall perform sampling in the manner
21  required by the Industrial Permit at the Vi-Cal Metals Facilities.

22     12.   <u>Numeric Limits and Contaminant Reduction</u>. During the 2009-2010
23  wet season, Defendant shall achieve compliance with this Consent Decree by
24  preparing the BMP Plan and monitoring plan required under this Consent Decree.
25  However, on or before July 15, 2012, Defendant shall achieve compliance by
26  showing that the concentrations of the contaminants listed in Table 1 that are
27
28

1  discharged from the Sites are below the California Toxics Rule ("CTR") CMC[2]

2  limits and additional numeric limits (collectively "Numeric Limits") set forth in

3  Table 1 below.

4  **Table 1. Numeric Limits**

| Contaminant | Numeric Limit[3] |
|---|---|
| Total suspended solids | 100 mg/L |
| Copper | 0.013 mg/L* |
| Lead | 0.065 mg/L* |
| Zinc | 0.120 mg/L* |
| Oil and grease | 15 mg/L |
| Aluminum | 0.750 mg/L |
| Arsenic | 0.340 mg/L* |
| Cadmium | 0.0043 mg/L* |
| Iron | 1.0 mg/L |
| Mercury | 0.0024 mg/L |
| Nickel | 0.470 mg/L* |
| Silver | 0.0034 mg/L* |
| Chemical oxygen demand | 120 mg/L |
| pH | 6.0-9.0 |
| Chromium (III) | 0.550 mg/L* |
| Chromium (VI) | 0.016 mg/L* |

16      13.    <u>Exceedances of Numeric Limits.</u>  If any sampling demonstrates

17  discharges of stormwater containing a concentration of pollutants exceeding

---

19  [2] The CTR CMC limits are the California Toxics Rule (CTR) Criterion Maximum Concentrations (CMC) from the Federal Register, Vol. 65. No. 97, May 18, 2000. Values differ for freshwater and saltwater discharges. Defendant shall use the value applying in the first Water of the State receiving its discharge. For metals the limits apply to the dissolved quantity, and hence defendant shall measure dissolved as well as total recoverable metals. In general, freshwater limits for metals depend on water hardness. Defendant shall measure the hardness in each discharge sample and use the resulting value as specified by the Federal Register to determine the specific CMC limits.

24  [3] Note: An * next to a numeric limit denotes a CTR Limit. CTR Limits are expressed as a function of total hardness in the water body based on the equations provided in Federal Register, Vol. 65. No. 97, May 18, 2000, and being hardness dependant will vary with the analyzed total hardness of the water body. The CTR Criterion Maximum levels expressed herein assume a total hardness of 100 mg/L.



1   Numeric Limits, as expressed immediately above, Defendant shall demonstrate

2   within 180 days that the potential total mass emission of the contaminant has been

3   reduced through a combination of decreases in its concentration and reductions of the

4   volume of the runoff discharged from industrial areas of the Vi-Cal Metals Facilities.

5   Defendant agrees to submit a plan for additional contaminant reduction to

6   Coastkeeper for review and comment as soon as practicable but in any event no later

7   than 30 days after receipt of sampling data demonstrating an exceedance.

8   Coastkeeper shall provide comments, if any, to the Defendant within 30 days of

9   receipt. Defendant shall incorporate Coastkeeper's comments in order to reduce the

10  mass emission of the contaminant and implement the reduction within 30 days of

11  receiving Coastkeeper's comments for completion within 60 days of receipt. If any

12  of Coastkeeper's comments are not utilized, Defendant shall justify in writing why

13  any comment is not being incorporated within 30 days of receiving comments. Any

14  disputes as to the adequacy of the mass emission reduction plan shall be resolved

15  pursuant to the dispute resolution provisions of this Consent Decree, set out at

16  Paragraphs 28 through 31 below. The baseline for mass emissions reductions

17  calculations at the Vi-Cal Anaheim Facility, consisting of the geometric mean of all

18  concentrations of stormwater contaminants sampled by Coastkeeper at the Vi-Cal

19  Anaheim Facility and sampled by Defendant at such Facility prior to the Effective

20  Date, is as follows:

21  **Table 2. Geometric Mean of Contaminants That Exceed Numeric Limits**

| Contaminant | Geometric Mean |
|---|---|
| Copper | 0.1424 mg/L |
| Oil and Grease | 29.9450 mg/L |
| Zinc | 1.2155 mg/L |
| Aluminum | 4.9710 mg/L |
| Total Suspended Solids | 171.8175 mg/L |
| Chemical Oxygen Demand | 209.5926 mg/L |
| Iron | 6.4929 mg/L |
| Cadmium | 0.0427 mg/L |

1    14.    For the contaminants set forth in Table 2 above, the demonstration that

2    the potential total mass emission of a contaminant has been reduced shall be made as

3    follows:

4         a.    Determine the site surface area discharging runoff containing the

5    contaminant before and after this Effective Date;

6         b.    Multiply the geometric mean of concentrations and site surface

7    area discharging before and after this Effective Date to obtain indicators of potential

8    mass emission before and after this Effective Date; and

9         c.    Show that the potential mass emission of the contaminant has

10   decreased by the following amount:

11

| If the concentration exceeds the CTR Limit by: | Then the potential total mass emission shall be reduced by: |
|---|---|
| 1-100% (i.e., up to 2 times the limit) | 50% |
| 101-200% (i.e., up to 3 times the limit) | 75% |
| 201-300% (i.e., up to 4 times the limit) | 95% |

15   15.    For the pollutants listed in Table 3 below, for which inadequate baseline

16   data is currently available for inclusion in Table 2 above, or for which the geometric

17   means are below the Numeric Limits set forth in Table 1, the following method set

18   out in a. through d. below shall be used to assess compliance with the Numeric

19   Limits described in Table 1 above for any discharge point where storm water

20   discharges occur during storm events smaller than the Compliance Storm Event.

21   **Table 3.**

22
| Contaminant | Geometric Mean[4] |
|---|---|
| Mercury | Insufficient Data |
| Lead | 0.0544 mg/L |
| Chromium (III) | Insufficient Data |
| Chromium (VI) | Insufficient Data |

26   [4] The references in Table 3 above to "Insufficient Data" indicate that the combined storm water
27   discharge sampling data currently available to Coastkeeper lack at least three sample results that
     are above the reporting limit for that contaminant from which to calculate the geometric mean.

28

Case 8:08-cv-00739-DDP-FMO    Document 19-2    Filed 08/07/2009    Page 14 of 24

| Arsenic | 0.0106 mg/L |
| Nickel | 0.1223 mg/L |
| Silver | 0.0098 mg/L |

a. Based on existing site conditions (100 percent impervious surfaces and no storm water infiltration or diversion) and the amount of rainfall that falls on the Facility during each of the monitored storm events described, the volume of water that would have discharged from the Facility prior to installation of the filtration and/or diversion measures shall be calculated.

b. Using the Numeric Limits described above, the mass of "allowable" pollutants will be calculated (volume of water assuming no filtration/diversion multiplied by the Numeric Limits) for each listed constituent.

c. The actual contaminant mass discharged for each of the pollutants listed above will be calculated (volume of water actually discharged multiplied by the analytical results for storm events where discharges occur);

d. For each of the monitored storm events, the calculated mass of actual contaminants discharged under subparagraph (c) above will be compared to the mass of allowable contaminants calculated under subparagraph (b) above.

16. <u>Numeric Limits and Breach</u>. If any sample taken during the duration of this Consent Decree reveals an exceedence of an applicable Numeric Limit without the corresponding subsequent demonstration of significant reduction in mass emissions, Defendant shall be in breach of this Consent Decree. However, the Parties agree that Coastkeeper will not enforce any breach of this Consent Decree for failure to meet applicable numeric limits and failure to demonstrate significant reduction of mass emissions of contaminants until the conclusion of this Consent Decree, provided that Defendant makes consistent progress towards achievement of the numeric limits during the duration of this Consent Decree. If Coastkeeper is dissatisfied with Defendant's progress towards achievement of the numeric limits set by this Consent Decree, Coastkeeper may elect to invoke the dispute resolution

1    procedures outlined in paragraphs 28-31 below.

2    ## C. STORM WATER POLLUTION PREVENTION PLAN

3        17.  SWPPP Revisions.  By the Effective Date of this Consent Decree,
4    Defendant agrees to revise the Storm Water Pollution Prevention Plans ("SWPPPs")
5    currently in effect at each of the Vi-Cal Metals Facilities to incorporate all storm
6    water pollution prevention measures and other requirements set forth in this Consent
7    Decree and/or the Industrial Permit.  Specifically, the SWPPPs shall include a
8    description of all industrial activities and corresponding potential pollution sources
9    and, for each potential pollutant source, a description of the potential pollutants from
10   the sources.  The SWPPPs shall also identify BMPs (and their implementation dates)
11   designed to achieve compliance with the Numeric Limits set forth in Table 1, the
12   mass emissions potential reduction measures, and CTR Levels.  Defendant shall
13   revise the SWPPPs as necessary to incorporate additional BMPs developed pursuant
14   to this Consent Decree.

15       18.  Coastkeeper's Review of Revised SWPPPs.  Defendant shall submit one
16   copy of each of the revised SWPPPs to Coastkeeper within seven (7) days of
17   completion of the revisions.

18           a.  Within twenty (20) days of Coastkeeper's receipt of the
19   revised SWPPPs, Coastkeeper shall provide Defendant with comments and
20   suggestions, if any, concerning the revisions to the SWPPPs.

21           b.  Within fourteen (14) days of Defendant's receipt of
22   Coastkeeper's comments on the revised SWPPPs, Defendant shall incorporate
23   Coastkeeper's comments and re-issue the SWPPPs.

24           c.  If Coastkeeper is dissatisfied with the SWPPPs after their
25   reissuance pursuant to paragraph 18(b) above, Coastkeeper may, within sixty (60)
26   days of Coastkeeper's receipt of the SWPPP, elect to invoke the dispute resolution
27   procedures outlined in paragraphs 28 through 31 below.

28

[proposed] Consent Decree         -15-        Case No. SACV08-0739 DDP (RNBx)



## D.   MONITORING AND REPORTING

19.   Site Inspections.  For the first two years of the term of this Consent Decree, Coastkeeper's Water Quality Engineer, accompanied by Coastkeeper's attorney or other representative, may conduct up to three yearly Site Inspections at the Vi-Cal Metals Facilities and may conduct up to two Site Inspections each year thereafter. The Site Inspections shall occur during normal business hours and Coastkeeper shall provide Defendant with forty-eight (48) hours notice prior to each inspection.  During the Site Inspections, Coastkeeper and/or its representatives shall be allowed access to the Vi-Cal Metals Facilities' SWPPPs and monitoring records and to all monitoring reports and data for the Vi-Cal Facilities. During the Site Inspections, Coastkeeper and/or its representatives may collect samples of storm water discharges at the Vi-Cal Metals Facilities.  A certified California laboratory shall analyze storm water samples collected by Coastkeeper.  Coastkeeper shall make all reasonable efforts to ensure that its inspections are scheduled in such a manner as to allow Defendant's compliance officer to be present at all inspections.

20.   Compliance Monitoring and Oversight.  Defendant agrees to help defray Coastkeeper's reasonable anticipated costs incurred in conducting Site Inspections and in other compliance monitoring and oversight by reimbursing Coastkeeper Five Thousand Dollars ($5,000) on or before August 15, 2009. Defendant agrees to make compliance monitoring and oversight funds payable to "Lawyers for Clean Water Attorney Client Trust Account" and delivered by certified mail or overnight delivery to Lawyers for Clean Water, Inc., 1004 O'Reilly Avenue, San Francisco, California 94129 attention Layne Friedrich.  Coastkeeper shall provide copies of any invoicing for Site Inspections and compliance oversight within 30-days of receiving a written request by Defendant. Any compliance monitoring money remaining when this Consent Decree terminates shall be refunded to Defendant.

21.   Reporting.  During the life of this Consent Decree, on a monthly basis, Defendant shall provide Coastkeeper with a copy of all compliance and monitoring

[proposed] Consent Decree                          -16-                    Case No. SACV08-0739 DDP (RNBx)



1   data, including inspection reports, related to the Vi-Cal Metals Facilities. During the
2   life of this Consent Decree, Defendant shall provide Coastkeeper with all laboratory
3   analyses related to the Vi-Cal Metals Facilities within seven (7) days of Defendant's
4   receipt of such information.

5       22.   Document Provision. During the life of this Consent Decree, Defendant
6   shall copy Coastkeeper on all documents related to water quality at the Vi-Cal Metals
7   Facilities that are submitted to the Regional Board, the State Board, and/or any State
8   or local agency or municipality.  Such reports and documents shall be provided to
9   Coastkeeper concurrently as they are sent to the agencies and/or municipalities.

10       **E.**    **ENVIRONMENTAL PROJECTS AND FEES.**

11       23.   Environmental Mitigation Project. Defendant agrees to pay Thirty Two
12   Thousand Five-Hundred Dollars ($32,500.00) to the O.C./I.E. Public Interest Green
13   Fund for use in a supplemental environmental project ("SEP") to eliminate or
14   mitigate the impacts of storm water pollution to California watersheds receiving
15   discharges from the Vi-Cal Metals Facilities.  Defendants shall make the mitigation
16   payment on or before March 15, 2010 and mail the payment via certified mail or
17   overnight delivery to the O.C./I.E. Public Interest Green Fund.  Defendant shall
18   provide Coastkeeper with a copy of such payment.

19       24.   Coastkeeper's Fees and Costs. Defendant agrees to reimburse
20   Coastkeeper for Coastkeeper's investigation fees and costs, expert fees and costs,
21   reasonable attorneys' fees, and other costs incurred as a result of investigating and
22   preparing the lawsuit, and negotiating a resolution of this matter, totaling Sixty-Six
23   Thousand Five-Hundred ($66,500.00) Dollars. Such payment shall be made on or
24   before August 15, 2009, payable to "Lawyers for Clean Water Attorney Client Trust
25   Account" and delivered by certified mail or overnight delivery to: Lawyers for Clean
26   Water, Inc., 1004 O'Reilly Avenue, San Francisco, California 94129 attention Layne
27   Friedrich.

28

### F. STIPULATED PAYMENT

25. Defendant shall make a remediation payment of One Thousand Dollars ($1,000.00) for each missed deadline included in or contemplated by this Consent Decree, unless the missed deadline results from a Force Majeure Event as set forth in paragraph 36 below. Payments for missed deadline shall be made to the O.C./I.E. Public Interest Green Fund for the restoration and/or improvement of the watershed in the area affected by the missed deadline. Defendant agrees to make the stipulated payment within 30 days of a missed deadline and mail via certified mail or overnight delivery to the O.C./I.E. Public Interest Green Fund. Defendant shall provide Coastkeeper with a copy of each such payment.

### G. COMMITMENTS OF PLAINTIFF

26. Stipulated Dismissal. Within ten (10) days of the execution of this Consent Decree by the Parties, Coastkeeper shall file this [proposed] Consent Decree with the United States District Court for the Central District of California.

27. Review by Federal Agencies. Plaintiff shall submit this Consent Decree to EPA and the United States Department of Justice ("DOJ") within three days of the execution of this Consent Decree for the 45-day review consistent with 40 C.F.R. § 135.5. In the event that EPA or DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

### H. DISPUTE RESOLUTION

28. This Court shall retain jurisdiction over this matter for the purposes of implementing and enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

29. Meet and Confer. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Parties in writing



1  of the matter(s) in dispute and of the party's intention to resolve the dispute under

2  this Section. The Parties shall then meet and confer in an attempt to resolve the

3  dispute informally over a period of 14 calendar days from the date of the notice.

4      30.   If the Parties cannot resolve a dispute by the end of meet and confer

5  informal negotiations, the party invoking the dispute resolution provision shall

6  provide notice to the other party that it intends to invoke formal dispute resolution by

7  filing a motion before the United States District Court for the Central District of

8  California. The Parties shall jointly apply to the Court for an expedited hearing

9  schedule on the motion.

10      31.   If Coastkeeper initiates a motion or proceeding before the Court relating

11  to enforcement of the terms and conditions of this Consent Decree, Coastkeeper shall

12  be entitled to recover fees incurred to enforce the terms of this Consent Decree

13  consistent with the provisions of Sections 505 and 309 of the CWA, 33 U.S.C. §1365

14  and § 1319.

15  **III.**    **RETENTION OF JURISDICTION AND TERMINATION**

16      32.   The Court shall retain jurisdiction over this matter for purposes of

17  interpreting, modifying or enforcing the terms of this Consent Decree, or as long

18  thereafter as is necessary for the Court to resolve any motion to enforce this Consent

19  Decree filed within 60 days after completion of the obligations set forth in the

20  Consent Decree. This Consent Decree shall terminate on September 30, 2012, if Vi-

21  Cal Metals' sampling conducted at the Vi-Cal Metals Facilities under this Consent

22  Decree demonstrates that Vi-Cal Metals has achieved the Numeric Limits set forth in

23  Table 1 above on or before July 15, 2012. Failure to achieve the Numeric Limits on

24  or before July 15, 2012 shall result in year-to-year extensions of the Consent Decree

25  until Vi-Cal Metals achieves the Numeric Limits agreed to under this Consent

26  Decree at the Vi-Cal Metals Facilities. If either Party has invoked the dispute

27  resolution process pursuant to Paragraphs 28 through 31 of this Consent Decree, and

28  the dispute has not been resolved at the time the Consent Decree would otherwise

1 terminate, the Consent Decree shall continue in effect until the dispute is resolved
2 either by mutual agreement of the Parties or by the Court.

3 **IV.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

4     33.    In consideration of the above, upon the Effective Date of this Consent
5 Decree, the Parties hereby fully release, except for claims for the Defendant's failure
6 to comply with this Consent Decree and as expressly provided below, each other and
7 their respective successors, assigns, officers, agents, employees, and all persons,
8 firms and corporations having an interest in them, from any and all alleged CWA
9 violations claimed in the Complaint, up to and including the Effective Date of this
10 Consent Decree.

11     34.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's
12 right to address or take any position that it deems necessary or appropriate in any
13 formal or informal proceeding before the Regional Board, EPA, or any other judicial
14 or administrative body on any other matter relating to Vi-Cal Metals.

15 **V.   MISCELLANEOUS PROVISIONS**

16     35.    Neither the Consent Decree nor any payment pursuant to the Consent
17 Decree shall constitute or be construed as a finding, adjudication, or
18 acknowledgment of any fact, law, or liability, nor shall it be construed as an
19 admission of violation of any law, rule, or regulation. Defendant maintains and
20 reserve all defenses they may have to any alleged violations that may be raised in the
21 future.

22     36.    Force Majeure. Force Majeure includes any act of God, war, fire,
23 earthquake, windstorm, flood or natural catastrophe; unexpected or unintended
24 accidents or failures to act not caused by Vi-Cal Metals' or its employee's
25 negligence; civil disturbance, vandalism, sabotage or terrorism; restraint by court
26 order or public authority; or action or non-action by, or inability to obtain the
27 necessary authorizations or approvals from any governmental agency. Force
28 Majeure shall not include normal inclement weather, economic hardship or inability

[proposed] Consent Decree    -20-    Case No. SACV08-0739 DDP (RNBx)

1  to pay. Any Party seeking to rely upon this paragraph shall have the burden of

2  establishing that it could not reasonably have been expected to, and which by

3  exercise of due diligence has been unable to overcome, the failure of performance.

4      37.    Construction. The language in all parts of this Consent Decree shall be

5  construed according to its plain and ordinary meaning, except as to those terms

6  defined in the Industrial Permit, the Clean Water Act, or specifically herein.

7      38.    Choice of Law. The laws of the United States shall govern this Consent

8  Decree.

9      39.    Severability. In the event that any provision, paragraph, section, or

10 sentence of this Consent Decree is held by a court to be unenforceable, the validity of

11 the enforceable provisions shall not be adversely affected.

12     40.    Correspondence. All notices required herein or any other

13 correspondence pertaining to this Consent Decree shall be sent by regular, certified,

14 or overnight mail as follows:

15     If to Plaintiff:

16
       Daniel G. Cooper
17     Samantha Williams
       Lawyers for Clean Water, Inc.
18     1004 O'Reilly Ave.
19     San Francisco, CA 94129

20
       With copies to:
21

22     Garry Brown
       Orange County Coastkeeper
23     3151 Airway Ave, Suite F-110
24     Costa Mesa, CA 92626

25     If to Defendant:
26     James A. Anton
       Walsworth, Franklin, Bevins & McCall, LLP
27     One City Boulevard West, Fifth Floor
28     Orange, California 92868-3677

With copies to:

Frank Calta
Vi-Cal Metals, Inc.
1400 N. Baxter Street
Anaheim, CA 92806

Notifications of communications shall be deemed submitted three days after the date that they are postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices. In addition, the Parties may agree to transmit documents electronically or by facsimile.

41.   Effect of Consent Decree. Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that the Defendant's compliance with this Consent Decree will constitute or result in compliance with any Federal or State law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendant to comply with all Federal, State, and local laws and regulations governing any activity required by this Consent Decree.

42.   Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

43.   Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

44.   Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

45.   Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement



[proposed] Consent Decree                    -22-              Case No. SACV08-0739 DDP (RNBx)

1  between the Parties and expressly supersedes any and all prior oral or written
2  agreements covenants, representations, and warranties (express or implied)
3  concerning the subject matter of this Consent Decree.

4       46.    _Authority_. The undersigned representatives for Plaintiff and Defendants
5  each certify that he/she is fully authorized by the party whom he/she represents to
6  enter into the terms and conditions of this Consent Decree.

7       47.    The provisions of this Consent Decree apply to and bind the Parties,
8  including any successors or assigns.  The Parties certify that their undersigned
9  representatives are fully authorized to enter into this Consent Decree, to execute it on
10  behalf of the Parties, and to legally bind the Parties to its terms.

11      48.    The Parties agree to be bound by this Consent Decree and not to contest
12  its validity in any subsequent proceeding to implement or enforce its terms. By
13  entering into this Consent Decree, Defendant does not admit liability for any purpose
14  as to any allegation or matter arising out of this action.

15      49.    The term "Effective Date," as used in this Consent Decree, shall mean
16  the date of expiration of the 45-day review period for the Federal agencies set forth
17  under paragraph 27 of this Consent Decree.

18      The undersigned representatives for Coastkeeper and Defendant each certify
19  that he/she is fully authorized by the party whom he/she represents to enter into the
20  terms and conditions of this Consent Decree and that this Consent Decree binds that
21  party.

22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

[proposed] Consent Decree              -23-              Case No. SACV08-0739 DDP (RNBx)



1    IN WITNESS WHEREOF, the undersigned have executed this Consent

2  Decree as of the date first set forth above.

3                                          LAWYERS FOR CLEAN WATER, INC.

4

5  Dated: 29 July 2009

6

7                                          Daniel Cooper
                                           Martin McCarthy
8                                          Attorneys for Plaintiff
                                           Orange County Coastkeeper
9

10                                         ORANGE COUNTY COASTKEEPER

11

12  Dated: 29 July 2009

13                                         Garry Brown
                                           Orange County Coastkeeper
14

15

16                                         WALSWORTH, FRANKLIN, BEVINS
                                           & McCALL, LLP
17

18  Dated: 28 July 2009

19                                         James A. Anton
                                           Attorney for Defendant
20                                         Vi-Cal Metals, Inc.

21

22                                         VI-CAL METALS, INC.

23

24  Dated: 28 July 2009        by:

25                                         Frank Calta, President

26

27

28
    [proposed] Consent Decree            -24-          Case No. SACV08-0739 DDP (RNBx)